## STATE *v.* TUFTS.  { Aug. 13, 1875.

*Rights of complainant—Duty of state's attorney—Practice.*

A complainant, who files a libel to procure the forfeiture of personal property for violation of law, and prosecutes the same wholly at his own expense, is entitled to do so without interference from the state's attorney.

When such libel is prosecuted at the expense of the county, its direction will be taken charge of by the attorney-general or solicitor.

A prosecuting officer will use his discretion, according to the circumstances of each particular case, whether to enter a *nolle prosequi*, or prosecute to final judgment.

Convenience requires the name of the libellant to be entered upon the docket.

The libel may be entered upon the civil or criminal docket.

FROM GRAFTON CIRCUIT COURT.

LIBEL, for the forfeiture of certain liquors, alleged to be kept for sale in violation of law. The liquors having been duly seized on legal process, John S. Tufts was allowed to appear as claimant.

Upon investigation, the court found, as matter of fact, that the town of Plymouth were the complainants; and the entry " Town of Plymouth, complainants " was made upon the docket, subject to the claimant's exception. The court transferred the libel from the state docket to the civil docket; to which the claimant excepted.

It was suggested to the court, that the attorney-general had under consideration the advisability of surrendering the liquors to the claimant. The prosecuting agent for the town of Plymouth contended that neither the attorney-general, nor any other official, could legally surrender the liquors. Thereupon the court reserved the question whether the attorney-general, or any other official, had legal power, either with or without the assent of the county convention, the county commissioners, or the town of Plymouth, to surrender the liquors, or any part thereof, to the claimant.

Some question having been raised as to who has a right to appear for Plymouth, notice is hereby given that any person may furnish a brief in this case.

The case was reserved for the law term of the late supreme judicial court.

*Blair* and *Burrows*, for Tufts, claimant.

*L. T. Flint,* for Plymouth, complainants.

SMITH, J. 1. The entry upon the docket of the name of the complainant seems a very proper thing to be done. It cannot in any way affect the disposition to be made of the case. It does not prejudice the rights

of the claimant, nor does it impose any new burdens upon him in defence of his rights. It does not change the proceedings necessary to establish the forfeiture of these liquors. Inasmuch as the statute allows any person to prosecute a complaint of this character, so far from there being any objection to entering the name of the complainant upon the docket, it would seem to be quite desirable, both for the convenience of the court and the parties, that it should be done.

2. In *State* v. *Barrels of Liquor*, 47 N. H. 369, this class of actions was held to be a proceeding *in rem;* issues are to be tried by the rules applied to the trial of civil causes ; claimants may appear and plead by attorney; claims and pleadings may be amended, issues joined, and verdicts rendered, as in other civil causes ; costs are allowed the prevailing parties, and executions issued for their recovery. Gen. Stats., ch. 249, sec. 8. When, therefore, the libel is commenced and prosecuted by a complainant other than the state, it is proper and right that such complainant should be permitted to do so without interference from the prosecuting officers of the government. As the complainant is subjected to costs in case he does not prevail, he ought to be allowed to employ such counsel as he is willing to confide his interests to. The proceeding, though criminal in form, is, like a complaint for bastardy, civil in its essential elements, and must therefore be governed by the rules applicable to civil causes. The reserved case finds, as matter of fact, that the town of Plymouth were the complainants. They are now in court asking to be allowed to prosecute to final judgment the complaint which they have instituted and thus far prosecuted. I think under the statute (Gen. Stats., ch. 249) they have the right to do this, and cannot be interfered with. This, of course, is upon the assumption that they have thus far done so, and will continue to do so at their own expense, and without expense to the county. *Pierce* v. *Hillsborough County*, 54 N. H. 433. But if it should be made to appear that the complainants have been prosecuting this suit at the expense of the county, they would clearly be in no position to dispute the right of the attorney-general or solicitor to control the further prosecution of this libel.

For obvious reasons the functions of the court and prosecuting officer are entirely distinct. The court cannot usurp the duties of his office, and say what cases shall and what shall not be prosecuted. The law has lodged that duty with officers selected for that special purpose, and who are responsible for the manner in which they perform those duties. Whether the state's attorney shall prosecute this libel to final judgment, or relinquish the liquors seized to the claimant in case it shall appear that the town of Plymouth have not been prosecuting this case at their own expense, or shall abandon its further prosecution, must depend upon the circumstances of the particular case. He is not required to prosecute an indictment if there is no proof to sustain it, or so little evidence that the chance of convicting is not such as to justify the attempt. Nor is he required to prosecute cases where " they are pursued in a spirit that renders them injurious to the public morals."

*Waldron* v. *Tuttle*, 4 N. H. 151. There is nothing to distinguish this class of cases from any proceeding where the prosecuting officer is obliged to use his discretion. The direction and control of any prosecution is left with him, acting under oath and upon his official responsibility. *Commonwealth* v. *Knapp*, 10 Pick. 477. His power to enter a *nol. pros.* is held *virtute officii.* He executes it upon his official responsibility, and the court has no right to interfere with its exercise; but it will take care that it shall not operate to the prejudice of the defendant's rights. *Commonwealth* v. *Tuck*, 20 Pick. 366. He is to exercise this power at his own discretion, and for its exercise he alone is responsible. *Commonwealth* v. *Wheeler*, 2 Mass. 174. The court never advise a *nol. pros.* except at the instance of the counsel for the government. *Commonwealth* v. *Andrews*, 2 Mass. 414. If an extreme case should arise, as where it is made to appear to the court that the prosecuting officer is acting corruptly, the court would be justified in refusing to permit a *nol. pros.* to be entered until the public authorities could remedy the evil; and for corruption in office he would be subject to impeachment.

If the further prosecution of this libel shall devolve upon the state, under the circumstances above supposed, the state's attorney must act according to the circumstances of the case. If in the exercise of a sound discretion he shall be of the opinion that the interests of the public require the discontinuance of these proceedings, he cannot be interfered with by a merely nominal complainant.

3. Whether the libel is placed upon the criminal or civil docket is only a question of convenience. The practice in the different counties is not uniform. If the libel is prosecuted at the expense of the county, its proper place would seem to be upon the criminal docket; if at the expense of a private complainant, its proper place would seem to be on the civil docket.

LADD, J. The provision of the statute, with reference to the forfeiture of spirituous liquor, manifestly has in view the same object as those other parts whereby its sale is regulated and prohibited, namely, to prevent or diminish the evils of intemperance. One of the modes adopted to bring about this end is a proceeding *in personam* by indictment for a penalty; the other is this proceeding *in rem* for a forfeiture of the offending goods. In form, the latter is to be regarded as a civil proceeding—*State* v. *Barrels of Liquor*, 47 N. H. 369; in substance, it is a proceeding for the enforcement of the criminal law—*Fisher* v. *Mc Girr*, 1 Gray 1, 26, 27, 1 Bish. Crim. Law, sec. 695, *et seq.* It has always been brought in the name of the state; and it was not until the act of July 2, 1870, that the prosecutor had any interest in the sale of the confiscated property. I think the libel partakes so far of the nature of a criminal proceeding, and the state is so far a party in interest, that it should properly be regarded as within the general management and control of the attorney-general. In exercising such control, of course that officer cannot disregard the rights which any prosecutor may have

acquired in the subject-matter of the litigation by virtue of the statute. If the prosecution has been carried on wholly by the complainant or private prosecutor, without calling in the aid of the solicitor or attorney-general, and without subjecting the county to any expense or liability, there would seem to be no reason for any interference by those officers, and probably no right to interfere would exist, at least so far as regards the interest of the prosecutor.

In this case, I think the attorney-general, with the assent of the complainants, may surrender the liquor to the claimants, upon such terms as, in his judgment, the public good requires. If the town of Plymouth have prosecuted the libel thus far at their own expense, and desire to prosecute it to a final result, taking the whole burden and risk of the same, according to the rule laid down in *Pierce* v. *Hillsborough County*, 54 N. H. 433, and so refuse their assent to a surrender, I think they have rights that cannot properly or legally be disregarded and destroyed without their assent.

CUSHING, C. J.    Mr. Belknap, the historian of New Hampshire, in his third volume, in the chapter on trade, navigation, fishing, and manufactures, takes occasion to lament that the reputation of the articles manufactured for exportation was in danger of suffering abroad from the want of proper governmental regulations in regard to surveys and inspections.

However this may be, it is true that the regulation of the exportation of beef, pork, pot and pearl ashes, lumber, and other articles, was somewhat extensively attempted in the legislation of the state. Whether this began under the provincial government I have not inquired, but it is certain that it appears early in the statute books of the state.

Occasionally attempts were made to enforce the provisions of the law by forfeiture of the articles attempted to be exported without proper inspection.    Some of these provisions still remain, some have dropped out by the wayside in the course of legislation, and some have been modified.    Gen. Stats., ch. 116, sec. 12, is a provision authorizing the inspector, in the case of butter or lard " being laden in any port or place in this state for exportation, not being in conformity to the provisions of this chapter," to make seizure thereof forthwith, and proceed in any court proper to try it, and, if the breach of the law is proved, providing for its forfeiture to the use of the officer seizing and prosecuting.

By Gen. Stats., ch. 119, secs. 10 and 11, casks of potash or pearlash, not properly inspected or branded, may be forfeited and sold, and the proceeds paid, one half into the county treasury, and the other half to the inspector seizing the same.

In the Laws of 1830, title 56, sec. 16, is a provision for seizing beef and forfeiting the same, one moiety to the use of the state, and one moiety to the use of the inspector seizing the same.

These are given as examples, among many, of cases in which provision is made for the forfeiture of personal property, which in some

way or other has been made the subject or the instrument of the violation of the law.

In Rev. Stats., title 25, a step was made for the first time, as far as I have discovered, to give some system and order to these proceedings for the forfeiture of personal property. The proceedings throughout are treated as civil, and not criminal. It is true that the object is to enforce penal legislation, but it is the object to do so by means of private enterprise, and not as a matter of public prosecution. There is a provision that the complainant shall have his costs allowed, not only when he succeeds, but when he fails, if he had reasonable ground for his proceeding ; and there is also provision for a recovery by the claimant of the property, not only of costs, but also of damages. This latter provision emphatically marks the proceeding as a civil suit maintained by a private individual, and not as a criminal suit maintained by the state.

Thus stood the law when, in 1855, the act for the suppression of intemperance was passed. In that statute there is a provision for issuing a search-warrant and searching premises where it is suspected that spirituous liquors are kept for sale, for seizing the liquors if found, for confiscating them, causing them to be sold, and the proceeds paid into the county treasury.

It is evident that this is a proceeding on behalf of the state. It seems designed mainly as a subsidiary provision for the discovery of evidence to be used in criminal prosecutions, and as there is no provision for remuneration to private prosecutors, there is certainly no reason to expect that these proceedings would be carried on by private enterprise. But here, again, the legislature marks this as a civil proceeding, by providing that in case the claimant succeeds " he shall be allowed his costs, to be paid out of the county treasury."

In the Gen. Stats. this provision for issuing a search-warrant does not appear in the chapter regulating the sale of spirituous liquors, but instead of it there is a provision—sec. 23—for the seizure of liquor kept for sale in violation of law, which, " upon due proceedings, may be adjudged forfeited, and disposed of according to law." These " due proceedings " are clearly those described in chapter 249, relating to forfeitures of personal property. It was found, however, that, although the due proceedings were specified in the General Statutes, there was no provision for disposing of the liquors seized according to law. It seems manifest that this omission must have been accidental. Accordingly, when, in 1868—*State* v. *Rum*, 51 N. H. 373—some liquor was seized, and afterwards adjudged forfeited, it was found necessary to pass the act of 1870, providing for the disposition of the forfeited liquor. This statute provides that so much of the liquor as is valuable may be sold, and one half the proceeds, after deducting the cost and the expense of prosecution, paid to the person, town, or city prosecuting, and the residue into the county treasury.

This statute does not recognize any prosecutor, excepting individuals, towns, or cities. It very properly provides that those prosecutors shall be indemnified out of the sales of the proceeds, if any, for

their costs and expenses, and also gives them one half of the balance after paying those costs and expenses. Now, I confess that I am entirely unable to see, in any part of the provisions now relating to this subject, anything which contemplates that the public authorities, either state or county, are to have anything to do, as prosecutors, with these proceedings for the forfeiture of spirituous liquor. Under the statute of 1855, the proceeding by search-warrant for the seizure of liquor, and the further proceedings for its disposition, were clearly designed to be conducted by the prosecuting officer of the state or county. The provisions, that the proceeds of forfeited liquor should be paid into the county treasury; that the claimant's costs, if he recovered, should be paid out of the county treasury, in strict analogy with the later provision—Gen. Stats., ch. 214, sec. 11 ; " that, in all civil actions in which the state is plaintiff, if the defendant prevails, he shall have judgment for costs against the county where the judgment is rendered,"—seem most emphatically to mark the understanding of the legislature that the proceeding under the law of 1855, for the forfeiture of spirituous liquor, was a civil suit, and not a criminal proceeding. So, also, it was held, in *State* v. *Barrels of Liquor,* 47 N. H. 369. The statute of 1870—Laws of 1870, ch. 3—by providing, without any reservation or exception, first for the indemnity of the persons, town, or city prosecuting, by payment of cost and expenses, and then the payment of one half of the net proceeds to such person, town, or city, seems equally emphatically to mark the sense of the legislature that this proceeding was intended to be left entirely to private prosecutors.

I cannot, therefore, avoid the conclusion, that neither the prosecuting officer of the state nor of the county has any authority, as such, over the proceeding in this case.

It is quite likely that prosecuting officers, not noticing the change in the law effected by the General Statutes, may have continued the practice of taking charge of these proceedings in court, and expenses may have been paid by the county. In such case I should hold, that, to the extent of indemnifying the county, the prosecuting officer ought to have a right to exercise that control which had been thus surrendered to him. I can see no reason why liquor seized upon a search-warrant, by virtue of Gen. Stats., ch. 237, sec. 1, and held by sec. 4, should not be embraced under the general provision in ch. 99, sec. 23, and proceeded against and disposed of according to Gen. Stats., ch. 249, and Laws of 1870, ch. 3.

I am not aware of any principle or' rule of law, excepting convenience, which determines the classification of actions on the docket ; and I do not see how the change of any particular action from the civil to the criminal docket, or the contrary, could be of any significance other than as matter of convenience.

*Case discharged.*